Thank you your honor. May it please the court, my name is Palmer Huvestal, I'm an attorney from Helena, Montana. I'm appearing on behalf of the appellant Lloyd Nickle. I'll reserve five minutes. The issue that I want to address this morning is the confrontation issue, because I think that's dispositive. And I would like to begin with a discussion of the standard of review. In our opening brief we indicated that we thought the standard of review was an abuse of discretion, however after reading the Larson case we think now that the standard of review is de novo. And the reason for that is because Larson held that if the district court excludes a particular area of inquiry for cross examination purposes, then the confrontation clause is implicated. And then that constitutes de novo review. And so in this case if we look at the three plea agreements that we were prohibited from cross examining on, they contained identical language for each witness. And we're talking about Leonard Ewald, we're talking about Margaret Sylvia, we're talking about Vaughn Rackham. They all contained identical language. And basically, I can read it, the language is, under appropriate circumstances the United States may move, but has not made any commitment as part of this agreement to move, for a reduction of sentence pursuant to Rule 35 Federal Rules of Criminal Procedure to reward the defendant for any substantial assistance the defendant provides after sentencing. So here we have four elements. We have, first, what are the appropriate circumstances under which, second, the reduction of sentence may occur, third, what are the mechanics of Rule 35, and four, what exactly is substantial assistance? Had the district judge allowed us to go into the plea agreements to cross examine on, what are the appropriate circumstances, I would have cross examined each and every witness, what they believed the appropriate circumstances were. They all had signed the plea agreement. I think Mr. Lahr himself had signed at least one of the plea agreements. Well, of course, it's absolutely standard impeachment. You might get something for testimony that helps convict my client. Boom. And the district judge says you can't talk about it. That's exactly right, which would have been great evidence. I'm willing to say that that's error, whether I do a de novo, whether I do abuse of discretion under any conceivable standard. So, why is it not harmless? All right, so the issue then, harmless error. The only evidence, the only definitive evidence of drug dealing against Mr. Nickel was the testimony of three witnesses, four if we count, his name escapes me right now, the fourth witness who didn't have a plea agreement, the guy that was not charged. But the testimony, the bare assertions of these witnesses were the only ones that provided any kind of evidence of drug dealing. Anything else, like the Federal Express receipts and so forth, they only corroborated that he might have been there or that he might have sent something. We don't have any wired buys. We don't have any drugs. We don't have any money. He was, when he was arrested, they had money, but he was also arrested in a casino playing poker. So, there's no hard evidence that the jury could look at to say, well, he got arrested with, you know, a pound or an ounce or whatever of methamphetamine. They must be telling the truth. And we're talking Chapman, so it has to be harmless beyond a reasonable doubt. Yes. Yes, Your Honor. And so, regardless of the standard, it was clearly in violation of the Schoenberg case. We're talking about benefits. We're talking about what triggered the benefits. We're talking about, you know, what they expected, what kind of reduction. Each and every witness said, well, I didn't like, for example, Leonard Ewaldt said, I didn't even realize that my- Pardon me? You're beating a dead horse. I'm sorry, I couldn't- You're beating a dead horse. Okay. Or maybe a live horse. Yeah, you're riding a very live one. Yeah, so you've already heard Judge Fletcher say what he said. Okay. And you didn't see Judge Fischer or me disagreeing with him or, you know, saying, oh, I don't know. So, I think sometimes it's worth listening and going on to your next point rather than trying to talk us out of it. I think that this is the dispositive issue in my view. What about the guilty plea? Are you pressing that? Not really, Your Honor, because Mr. Nickel did, in fact, have the opportunity to proceed forward with his guilty plea. He didn't- But I thought Judge Haddon said, made it clear he can only do so if he owns up. If he owns up. He got to give him another chance. So, you're not arguing that there was a- I thought it was in your brief, but you're giving up on that point? Well, I think that the strongest argument for purposes of oral argument is the confrontation issue. And I think the government has- You think that the judge could properly ask Mr. Nickel to sign on to the offer of proof, as he did put it to him, say, I won't ask you to make any admissions that you don't want, but I need to have enough evidence that the government can prove that this was a multi-state conspiracy. And you, I think, said, we agree to that, but you wanted to not have him sign on to all of the things that were in the offer of proof because you contested the credibility of some of the witnesses. And when you pushed that point, the judge terminated the plea and forced you to go to trial. Yes, Your Honor. And I think that- You think he applied all the proper standards? No, because I think that he- what he did was admit to the elements of the offense. He could have, and it seemed to me that what Mr. Nickel was doing at the time was reserving his right to contest drug amounts, to contest other things that might be relevant for sentencing purposes. But the judge said, and this is true, he has to be satisfied before he gets to sentencing that Mr. Nickel is accepting responsibility for the elements that the government has claimed for the level of charge. This is not a pleading to a lesser offense. This is pleading to what they charge. Yes, Your Honor. So did the judge cross the line in trying to elicit enough detail and facts that Mr. Nickel understood and admitted to to sustain the validity of accepting a guilty plea? Yes, Your Honor, he did. I mean, he could have- he admitted to the elements of the offense. If there were factual determinations that he later had to make as to, again, drug amounts or anything that might be relevant for purposes of the guideline calculation, then that could have occurred at a sentencing hearing. But for purposes of obtaining and taking the guilty plea, there was sufficient evidence, in our view, on the record at the time. Let me ask you a slightly different practical question. Assuming that the district judge improperly rejected the plea agreement, and assuming further, which is at this point merely an assumption, you're going to get this conviction set aside for the violation of the Confrontation Clause, right? Do you want that plea agreement, or do you want to start over? Or rather, your client. I don't know if he necessarily wants that particular plea agreement. Maybe Mr. Lahr will give us a better plea agreement instead of having to try the case. I'm trying to figure out whether it's worth it for us to go into the question as to whether that particular plea agreement was wrongly rejected. That might suggest that we think that then you're going to be stuck with that plea agreement. Yes. And I want to know whether you want to be stuck with that plea agreement. I'm not sure what the consequence will be if we reverse, whether you have to stick with it or not, but the question occurs to me. Yes, Your Honor, and I understand the court's concern as well. I guess at the present time, I can't really answer that question in terms of what the client wants to do. I guess it just depends on what the court does. Okay. Well, it might be. I'm kind of just spinning it out here in my own head. It might be that if that plea agreement was wrongly rejected, that sets a floor, that is to say you were entitled to that plea agreement, and if we set the conviction to one side, you can't be offered anything worse. Yes. I believe so. Thank you. Okay. We'll hear from the government. Thank you. My name is Michael Lahr. I'm an assistant U.S. attorney from Helena, and I think based on the court's reaction so far, the place I would like to emphasize on the harmless error that you discussed, I think that there were two. This is a harmless error? On the confrontation. On the confrontation. Good luck with that. I think what has been neglected in counsel could not remember the name of Matthew Strickland, and I think that's the first place I would like to start. You're saying he's a memorable witness. He is a memorable witness. He does not have any of the issues with Rule 35. He was convicted in another state. He was part of the conspiracy, but that is why there were no federal charges against him. He came over from North Dakota, and so we don't have any of the confrontation difficulties with him. But I think he is very significant, and I think that, again, when you look at Larson or Schoeneberg, you look at all the different factors for the harmless error consideration, what's very important in this case and what is a little bit different, certainly, between this case and Schoeneberg is the fact that, in that case, if you believed one witness, there would be an acquittal. If you believed the other witness, there would be a conviction. In this case, all of the witnesses, and I realize from the harmless error beyond a reasonable doubt, were essentially pulling out those three witnesses who were arguably tainted. But the fact of the matter is, and what the jury, I think, was able to hear, was that all four of these witnesses told essentially the same story, and I think that that's what's most important is that there was consistency. And you're telling me that it's beyond a reasonable doubt that if you had one witness without a plea agreement who testifies to this, and then you get three others, that the government looks as though they may be willing to reward for favorable testimony, and that the government thinks it necessary to put on these three witnesses that is willing to reward for favorable testimony, that the jury is not going to say, you know, I've got just a niggling little doubt about the case then. If they'd only put on the one witness who has no plea agreement, no promise of favorable treatment, well, okay, they're pretty sure of the case, but they need these three more as to whom they're willing to offer some favorable treatment? I'm working on Chapman here. It's a pretty high standard for you. Well, Ed, I do certainly see your point. I would think, again, looking at the rationale that was put forth in Larson specifically, what this court indicated was in that case this single witness alone could put this individual, could put the defendant in the conspiracy. And looking at it in the same token here with Strickland, everyone else excised from the equation, is that you could say Strickland knew about the FedExes, Strickland was testified to, and there was extrinsic evidence which placed the defendant Nickel, it placed Strickland, it placed Sylvia at this Barton's Casino in Jackpot on December 13th. It put them all together. That has nothing to do with anyone else's testimony but has to do with extrinsic evidence. He testified to that, which was fully corroborated. He also discussed the amount, the pounds. So he by himself, Matthew Strickland, does put Nickel in this conspiracy with his evidence, his testimony, his testimony alone, along with the corroborative evidence, which were somewhat denigrated, but the several FedExes. All you've proven with that is that if all you had was his testimony and the jury had come back with a guilty verdict, you'd have sufficient evidence to support the verdict. But that's not the issue. The question is not whether he alone could have supported the verdict. The question is whether having these three other witnesses who could have been undermined but weren't, whether their testimony was likely necessary to in fact persuade the jury to find guilty. If you just had one witness and if the government had thought one witness is enough, as Judge Fletcher suggested, if you thought you didn't need these additional witnesses for which you paid dearly by giving them good deals, you wouldn't have made a deal with them. Why bother giving them a deal to testify if you thought that you've got this one solid witness? But you didn't do that. You put on one witness and showing lack of real confidence in that witness, you then backed him up with three others. And unfortunately, those three others are now tainted. I can see precisely what you're saying from the jury's point of view in looking at it. Obviously, from the trial point of view, cumulative evidence is often used. Unfortunately, in this case, three of those witnesses become tainted. But looking at it from the harmless, at least my understanding is you would pull out those witnesses and say, what's left? Is there sufficient amount of evidence that this jury could have found? No, I think not. I think that's not what you do. You don't sort of say, oh, you pull the stuff out and you say what's left. You ask, you pull the stuff out, including all of the effect that they're likely to have had to buttress the testimony of the one remaining witness. I mean, they performed the function. Other than themselves providing evidence, they also provided further data points to buttress up the one existing witness. That's what we have to do, isn't it? And we don't ask the question, was it enough? Was there sufficient evidence there that the jury could have come out that way? We have to say we think the jury would have come out that way. No? I think your last statement is absolutely correct. If you remove the three witnesses that we're discussing as tainted and you are only left with what is left, which is the extrinsic evidence and Matthew Strickland. In other words, we're no longer talking about Strickland buttressing or cumulative to those other witnesses but by himself. And I think the government would assert that all of the data points that you talk about, if you had stricken those from the record and all you heard, all the jury heard from was Matthew Strickland, I think as in Larson you'd say that one witness alone without any of the other witnesses would have been sufficient to convince the jury beyond a reasonable doubt that this conspiracy existed? Would, not could. We have to be convinced that that's in fact what happened, not that a rational jury could have come out that way. I agree. It's not the reverse. That is what you would have to conclude is that the robust nature, and I think it is robust in that he has very specific information. Everything that he says is corroborated by extrinsic evidence. He was there. He was with Mr. Nickel. That is extrinsically proven by the records that this Barton's Casino had. We know they were both there. We know that Margaret Sylvia was there. Without Margaret Sylvia testifying, without anybody else testifying, just his testimony and the extrinsic evidence, we know they were there. We know they were there on those dates. Again, obviously you're relying on him when he says there were 10 pounds of methamphetamine that was exchanged at that point in time, but that is his testimony. His testimony is very clear, and it is very clear from the extrinsic evidence that a FedEx occurred right before this meeting. Again, he is there with Nickel. He is there with Sylvia. So you have this confluence of events that is supported not only with his testimony but extrinsically with this other evidence that we think isn't. What do you have to say about this judge's refusal to accept the guilty plea? I think, again, I think the problem that the court had in this case, as we tried to spell out in the brief, was that on the one hand you are not wanting to make any true admissions as far as the actual character. We understand what the problems the court had, but why is that an illegitimate reason to reject the plea? The requirements are that there be a factual basis in the record. It does not say that it has to come out of the defendant's mouth or that he has to do a mea culpa. Now, he may be well advised to do a mea culpa because that's likely to bear on sentencing, but where does this thing come from? I have to hear it out of your mouth. Doesn't Vasquez Ramirez say that the requirements of Rule 11 are satisfied that this court must accept the plea? If there is, in fact, factual basis in the record, it doesn't come out of the defendant's mouth, what basis in law does the state judge have to second-guess a decision that's entered into by the government with a defendant? I would agree that it is problematic, but I would point out that in this case not only did you not have the words coming from the defendant's mouth, which I agree that in and of itself one cannot say, well, it doesn't have to. I don't think Rule 11 requires that. I think the court's exactly correct. I think the difficulty here is the factual basis has to come from somewhere. This is just a look. Refuse. It doesn't come out of your mouth? I'm not going to take it. Go away. Well, I think in addition to that, the problem came that there was. . . Is there, in fact, no. . . There was, in fact, nothing in the record. You, as you stand there representing the United States, can you tell me that there's, in fact, not factual basis in the record that would have supported the plea? Even with the defendant saying no more than he said? I think he indicated the elements. I would say no, but for this reason, it was the follow-on in that not only did they not want to discuss the offer but their proof was untrustworthy. Whose they? This would have been counsel for the defendant at this time, not Mr. Huvestal, but counsel at that time. So what? So what if they say it's untrustworthy? This is why we have district judges. Do they accept everything that the defendant says? Oh, it's untrustworthy? There was evidence. I mean, there's no doubt about the fact that the government presented evidence, right? The judge could look at the evidence and say, I do not find it trustworthy or I find it unreliable, and therefore I reject the plea because the evidence doesn't support it. That judge can do that, but that's not what the judge did. What the judge said is unless the defendant, out of his own mouth, provides evidence of the plea, I'm not going to accept it. And that's not in the law. That's the district judge making it up as he goes along. It's contrary to our clear holding. I think it's clear. It's certainly well written, holding in Vasquez Ramirez. And if it didn't say that, we need to go back and say it again just to make it clear. So even Judge Haddon will understand it the next time. It is well taken, Your Honor. And as I say, I think the interesting aspect of this was that not only were there no admissions, but the offer proof, the evidence that otherwise the court could have found, were by the defendant's own assertions untrustworthy. And I think on that basis the court determined that it could not go further, not merely on the basis that he did not admit by his own mouth what could have been the factual support. I've got another question, or maybe it's a comment, directed more to the confrontation cause problem with the three witnesses than with respect to the plea bargain, although it could be applicable there. Were you the trial lawyer? I was one of the trial lawyers, yes, Your Honor. So you're sitting there in the courtroom. The defense tries to cross-examination with respect to the plea agreement, trying to impeach your witness by pointing out that there's a deal here under which there's at least some possible benefit if the testimony is useful to the government. You know darn well that the district judge just made a mistake, and he makes it three times, and you just sat there. Now I understand that it's not normal for someone to make an objection against your own interest, but I would have thought actually it would have been in your interest to make an objection because your case just went out the window, at least in my view, once the judge makes those mistakes with respect to those three witnesses. Why didn't you stand up or one of your team stand up and say, Your Honor, I think this cross-examination should be allowed? I think, Your Honor, in hindsight, obviously one looks back and— Because I think you probably would have won your case even if the impeachment had been allowed. In the trial aspect, I think you're absolutely correct. I think in the heat of the trial, in that courtroom, one thinks, What do I do here? Will I be next placed in the line of fire? How will this look? That did occur to me that maybe you don't want to irritate the judge by ganging up on him so that everybody, all the lawyers in the courtroom are saying, Your Honor, you're wrong. Of course you imagine yourself here in Seattle with a very different panel. At the time, one does not see— Not to mention any names. One does not see this panel at the time one is there. That's the only explanation that I can offer. I think one thinks through rapidly and wonders, What do I do next? How can I do anything next? Was this an objection? Did the judge's rulings respond to an objection? No, Your Honor. No, Your Honor. The United States did not object to the line of questioning, obviously. But the defense objected. Yes. They objected to the first one. They didn't object to the second one. They objected to the third one. There was a sidebar. I mean, this did not sneak up on the district judge that there was a mistake, or at least that the defense thought there was a mistake. Right. And I think there was a sidebar. There was no sidebar—well, not technically a sidebar. Away from the presence of the jury, counsel was allowed to make a record. Oh, there you go. Yes. My question was, What triggered the sidebar? In other words, it was the defense protesting the judge's ruling? Yes. Okay. You didn't object to his asking the question about Rule 30? No, the government did not object. Documentation, obviously, and providing discovery. I just couldn't remember. It moved rather quickly, and counsel requested an opportunity. And sometimes we're critical from the bench of the tactics of either side. I don't intend my comment to be one of, How could you possibly have done what you did? I understand why you did. This can happen, but it was a mistake. Or rather, not what you did, but rather what you didn't do. And one, as you say, in hindsight, one can look back and say, We could have perhaps done this better. Perhaps there would have been an opportunity to clarify. Again— Perhaps then he would have had an acquittal, and we wouldn't be here now, right? All those things are possible. Thank you.
judges: Kozinski, Fletcher, Fisher